UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMES MERCHANDISING CORPORATION<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GROTON INDUSTRIES, INC., d/b/a<br>CHEYENNE INDUSTRIES, INC.,<br><br>　　　　　　　　　　　Defendant. | Case No.  08-cv-1836<br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW REFERENCE AND MOTION TO STRIKE AND SHOW CAUSE** |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO WITHDRAW REFERENCE AND MOTION TO STRIKE AND SHOW CAUSE**

　　　　Comes Defendant Groton Industries, Inc. a/k/a Cheyenne Industries, Inc. ("**Groton**" or "**Defendant**"), by and through its counsel, and, in support of its Motion to Withdraw Reference (the "**Motion**"), states as follows:

**Background**

　　　　Chapter 11 Debtor-in-Possession and Plaintiff, Ames Merchandising Corporation ("**Ames**" or "**Plaintiff**"), filed its Complaint to Avoid Preferential Transfer ("**Complaint**") against Groton on July 8, 2003, with the Bankruptcy Court for the Southern District of New York (Adv. Pro. No. 03-8490).  In response to the Complaint, Groton has invoked its right to a jury trial and requested that the standing reference to the Bankruptcy Court be withdrawn and this matter be transferred to District Court so a jury trial may move forward.

　　　　In opposing the Motion, Ames does not dispute that Defendant's right to jury trial ultimately requires the reference to be withdrawn and transferred to the District Court for jury

1

trial. Rather, Ames requests that this Court delay withdrawing the reference until the eve of the trial date. (Plaintiff's Mem. of Law at Pg. 4). As set forth herein, this matter should be transferred to the District Court <u>immediately</u> so that this Court may issue its scheduling order setting the trial date and discovery deadlines. Judicial economy would best be served with an immediate transfer of this case to District Court and would prevent multiple, conflicting scheduling orders in each court, unnecessary and duplicate preparation in each court, and duplicate rulings by each court since all determinations by the Bankruptcy Court are subject to review by the District Court. In addition, as set forth herein, Ames has unilaterally delayed this case from moving forward for over four months. As such, Ames is estopped from arguing that an immediate transfer to the District Court would be inefficient or would not promote judicial economy.

Finally, Groton requests that this Court strike from its record certain confidential mediation materials attached to the <u>Declaration of Kevin Fritz in Opposition to Defendant's Motion to Withdraw the Reference to the Bankruptcy Court</u> (the "**Declaration in Opposition**") that was filed with this Court on March 7, 2008, on behalf of Plaintiff.

## **Legal Argument**

A.  <u>Defendant's Demand for Jury Trial Requires Withdrawal of Reference.</u>

As previously set forth in Groton's Motion and supporting brief, withdrawal of the reference is required due to Groton's demand for jury trial made pursuant to the Seventh Amendment of the United States Constitution, Federal Rule of Bankruptcy Procedure 9015, Federal Rule of Civil Procedure 38, and Local Rule 9015-1. *See also*, <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33 (1989). Pursuant to 28 U.S.C. §157(e) and Federal Rule of Bankruptcy

Procedure 9015(b), the bankruptcy judge is not authorized to conduct a jury trial of this adversary proceeding without the consent of all parties, which consent has been expressly withheld by Groton.

In opposing the Motion, Ames does not dispute that Defendant's right to jury trial ultimately requires the reference to be withdrawn and transferred to the District Court for jury trial. Rather, Ames requests that this Court delay withdrawing the reference until the eve of the trial date. (Plaintiff's Mem. of Law at Pg. 4). Ames argues that a demand for jury trial does not constitute "cause" for withdrawal of the reference, citing Enron Corp. v. Belo Co., 317 B.R. 232 (S.D.N.Y. 2004). However, the Enron decision only determined that, in that particular case, the reference should not *immediately* be withdrawn and factors of judicial economy favored the bankruptcy court managing pre-trial proceedings. Such factors are not present in this case, and judicial economy will best be served with an immediate withdrawal of the reference.

B.  Interests of Judicial Economy and Prevention of Delay Support an Immediate Withdrawal of Reference.

In withdrawing cases from the bankruptcy court, courts must consider "judicial economy, delay and cost to the parties, uniformity of bankruptcy administration, forum shopping, and other related factors to determine if permissive withdrawal is warranted." Enron Corp. v. Belo Co., 317 B.R. 232, 234 (S.D.N.Y. 2004) (internal citations omitted). In the Enron case, the court determined that an immediate withdrawal was not appropriate under the facts of that case, stating:

> This case is still in the early stages and because of the large number of defendants and unresolved pre-trial matters, especially discovery, one can only speculate when it will proceed to trial, if at all. The Bankruptcy Court has presided over this case for almost

3

>one year, is already familiar with Enron's claims, and thus is best
>equipped to handle discovery and other pretrial matters.

Id. at 235.  Such factors, however, are not present in the instant case, and judicial economy will be served best by an immediate withdrawal from the Bankruptcy Court. Specifically, since Ames filed the Complaint over four and a half (4 ½ ) years ago, there has been no further activity in this case other than the filing of Groton's answer to the Complaint and Defendant's Motion to Withdraw Reference and the referral of all adversary proceedings to mediation.  Additionally, there have been no hearings specific to this adversary proceeding other than a telephonic hearing conducted in connection with Defendant's Motion to Withdraw Reference.  As such, the factor of "claim familiarity" weighs in favor of an immediate transfer to the District Court.

An immediate transfer to District Court will also prevent further delay of this matter.  Ames argues that an immediate withdrawal from Bankruptcy Court will frustrate that court's goal of having the parties mediate this dispute.   (Plaintiff's Mem. of Law at Pg. 6).  However, the parties' formal mediation session on November 7, 2007 was unsuccessful, and Ames has failed to respond to Defendant's subsequent efforts to settle this matter, through the mediator or otherwise.  Nevertheless, Ames continues to assert that mediation is on-going and has not been closed, which has only resulted in further delay and prevented this case from moving forward to trial[1].

---

[1] Pursuant to the Mediation Order, attached to Plaintiff's Declaration as Exhibit C, all pre-trial matters, including discovery, are stayed pending mediation being formally closed.

Ames further argues that this matter should remain in Bankruptcy Court because a scheduling order governing all adversary proceedings has previously been entered by the Bankruptcy Court. (Plaintiff's Mem. of Law at Pg. 6, Plaintiff's Declaration, Exhibit B). As stated above, however, Ames has unilaterally delayed moving forward under said scheduling order. Furthermore, this case differs from all other adversary proceedings due to Defendant's demand for jury trial and Motion to Withdraw Reference. As such, the Bankruptcy Court's scheduling order does not address the pre-trial matters that are presented by this case alone, and a scheduling order issued by the District Court will be required that will address such matters and that will comply with the District Court's docket schedule.

C.      Exhibit D to Plaintiff's Declaration in Opposition Should Be Stricken from the Record.

Finally, Defendant requests that this Court strike from its record certain confidential mediation materials attached to Plaintiff's Declaration in Opposition that was filed with the Court on March 7, 2008. Defendant additionally asks the Court to issue an Order requiring Plaintiff and Plaintiff's counsel to appear and show cause why sanctions should not be issued against them for willfully violating various orders of the bankruptcy court and mediation instructions as set forth herein. Specifically, Plaintiff's counsel has attached as Exhibit D to its Declaration in Opposition, a letter from Defendant's counsel dated January 29, 2008, and addressed to the mediator, Neil Forrest (the "**Mediator**"). A previous settlement offer from Defendant's counsel to Plaintiff's counsel dated November 28, 2007 (the "**Settlement Offer**"), was enclosed with the January 29 letter and likewise filed with the Court as Plaintiff's Exhibit D to its Declaration in Opposition.

The Settlement Offer sets forth a proposal of settlement of the various claims between the parties, including, *inter alia*, the very claims being litigated in this matter. The Settlement Offer extended specific settlement terms and dollar amounts on behalf of Defendant and expressly stated that the Settlement Offer was being submitted "solely for the purpose of settlement."  The Settlement Offer further provided that it "shall not be admissible in any proceeding other than a proceeding by either party to enforce any settlement agreement each consistent with the terms of this letter."  The Settlement Offer constitutes settlement discussion made by, or on behalf of, the Defendant during the mediation process.

Section 5.1, of General Order M-211[2] of the United States Bankruptcy Court for the Southern District of New York, provides that "*[a]ll statements by the mediator, by the parties or by others during the mediation process shall not be divulged by any of the participants in the mediation (or their agents) or by the mediator to the court or to any third party*" (emphasis added).

Section 5.2, of General Order M-211, in pertinent part, further provides:

> 5.2 <u>Confidentiality of Mediation Effort</u>.  Rule 408 of the Federal Rules of Evidence shall apply to mediation proceedings.  Except as permitted by Rule 408, *no person may rely on or introduce as evidence* in connection with any arbitral, judicial or other proceeding, including any hearing held by this court in connection with the referred mater, any aspect of the mediation effort, including, but not limited to:

---

[2] General Order M-211 amended General Orders M-117 and M-143 and establishes mediation procedures governing all preference claims and actions asserted under Section 547 and 550 of Title 11 of the United States Code.

> A. *Views expressed or suggestions made by any party with respect to a possible settlement of the dispute. . . .* (emphasis added).

In addition, the Mediator's letter dated August 10, 2007 stated:

> In order to promote communication among the parties, counsel and the Mediator and to facilitate settlement of the dispute, each of the undersigned agrees that *the entire mediation process is confidential. All statements made during the course of the mediation are privileged settlement discussions, and are made without prejudice to any party's legal position, and are inadmissible for any purpose in any legal proceeding.* These statements, offers, promises, and conduct (a) will not be disclosed to third parties except persons associated with the participants in the process, and (b) are privileged and inadmissible for any purposes, including impeachment, under Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule or common law provisions (emphasis added).

A copy of the Mediator's instruction letter has been attached hereto as Exhibit A and is incorporated by reference herein.

The Settlement Offer constitutes a privileged and confidential communication made by the Defendant during the mediation process and, as set forth above, Plaintiff's disclosure of the Settlement Offer is a willful violation of: (1) General Order M-211 of the United States Bankruptcy Court for the Southern District of New York, (2) the Order Establishing Mediation Procedures Governing Certain Adversary Proceedings Brought Pursuant to 11 U.S.C. §547 entered in the Plaintiff's Chapter 11 proceeding (Case No. 01-42217) on June 25, 2007, and (3) the Mediator's instruction letter.

By letter dated March 25, 2008, Ames' counsel states that Exhibit D was submitted for the purpose of establishing that mediation had not been closed. Such purpose could, however, have easily been accomplished without disclosing privileged and confidential mediation

7

materials by simply not attaching the enclosed letter dated November 28, 2007 by Defendant's counsel.  The March 25, 2008 letter from Ames' counsel is attached hereto as Exhibit B and incorporated by reference.

This letter further states that Ames' counsel will only agree to withdraw the confidential mediation material upon Defendant's stipulation that the mediation remains active, which only further evidences Ames' willful violation of the bankruptcy orders and mediation instructions. Ames continues to violate such orders and instructions until such time as Defendant agrees to stipulate certain facts, which are neither relevant nor material to the instant proceeding.

Accordingly, Plaintiff's Exhibit D to its <u>Declaration of Kevin Fritz in Opposition to Defendant's Motion to Withdraw the Reference to the Bankruptcy Court</u> should be stricken from the Court's record in its entirety and the Court should issue an Order requiring Plaintiff and Plaintiff's counsel to appear and show cause why sanctions should not be issued against them for willfully violating various orders of the Bankruptcy Court and mediation instructions as set forth herein.

Sanctions are appropriate under the circumstances of this case.  The United States District Court for the Southern District of New York has repeatedly issued sanctions for intentional violations of mediation's confidentiality provisions.  *See* <u>Bernard v. Galen Group, Inc.</u>, 901 F. Supp. 778, 782-84 (S.D.N.Y. 1995) (sanctioning attorney for intentionally disclosing to the court settlement offers made during mediation proceeding); *see also*, <u>Cohen v. Empire Blue Cross & Blue Shield</u>, 178 F.R.D. 385 (S.D.N.Y. 1998) (sanctioning attorney for violating confidentiality provisions of court-annexed mediation program).

**Conclusion**

In light of the foregoing, Groton respectfully requests that this Court enter an order (i) withdrawing the reference of this adversary proceeding from the Bankruptcy Court and transferring it to the District Court's docket, (ii) striking Exhibit D to Plaintiff's Declaration in Opposition from the record and (iii) granting such other and further relief as the Court deems appropriate.

Dated: New York, New York
       March 26, 2008

Respectfully submitted,

WHITE & CASE LLP

By: /s/ Sarah N. Campbell
Andrew DeNatale (ADN-2429)
Evan C. Hollander (EH-0191)
Sarah N. Campbell (SC-6976)
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

-and-

HOPKINS LAW FIRM, P.A.
Gregory M. Hopkins (admitted *pro hac vice*)
Stewart Headlee (admitted *pro hac vice*)
1000 West Second Street
Little Rock, AR  72201

Attorneys for Defendant Groton Industries, Inc.

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, DC<br>PARIS<br>BRUSSELS<br>LONDON<br>MOSCOW | ONE LIBERTY PLAZA<br>NEW YORK, NY 10006-1470<br>(212) 225-2000<br>FACSIMILE (212) 225-3999<br>WWW.CLEARYGOTTLIEB.COM<br>Writer's Direct Dial (212) 225-2488<br>E-Mail: nforrest@cgsh.com | FRANKFURT<br>COLOGNE<br>ROME<br>MILAN<br>HONG KONG<br>TOKYO |

August 10, 2007

**VIA FIRST CLASS MAIL**

**Stewart Headlee Esq.**
**Hopkins & Allison**
**1000 West Second Street**
**Little Rock, AK 72201**

Bijan Amini, Esq.
Avery Samet, Esq.
STORCH AMINI & MUNVES PC
2 Grand Central Tower PC
New York, New York 10017

Re:  Ames Department Stores, Inc. et al.; Case No. 01-42217 (REG)
     Ames Merchandising Corp. v. Groton Industries, Inc. / CHEYENNE
     Adv. Pro. No. 03-08490

Dear Mr. Headlee:

As you know, the above-referenced action (the "Action") has been referred to mediation. Neil P. Forrest has been appointed the mediator (the "Mediator"). The Mediator has run a conflicts check and has discovered no conflicting relationships with respect to the Action.

The Mediator has designated eight mediation days from which you can choose your preferred mediation date: September 18, 19, 26 and October 3, 10, 12, 17, 19. However, due to the large number of cases, please be advised that mediations will be scheduled in the order in which responses to these scheduling letters are received. Please contact Megan Altman (maltman@samlegal.com, 212-497-8244) at Storch Amini & Munves PC to schedule your mediation. The mediation will take place at Mr. Forrest's office at One

1

Liberty Plaza, which is downtown in the World Trade Center Area. After we receive your preferred date we will get back to you with the specific date and time for the mediation.

Pursuant to Judge Gerber's July 25, 2007 Mediation Order, the Mediator's fee is to be split evenly between the parties. The Mediator's fee is $695 per hour, to be split by the parties. Please submit your deposit of $695 by check payable to Cleary Gottlieb Steen & Hamilton LLP and have it delivered in such a manner as to be received by Megan Altman no later than ten (10) business days before your scheduled mediation or September 15, 2007, whichever is sooner. Please note that your $695 payment is only a deposit and may be subject to addition or subtraction depending on the actual time spent by the Mediator on this mediation. If the mediation is cancelled more than five business days prior to the scheduled mediation, your deposit shall be refunded. If the mediation is cancelled on less than five (5) days business notice, half of the deposit will be refunded and the other half forfeited by you. If the mediation is cancelled within 48 hours of its scheduled date, you will forfeit the deposit in full.

Confidential mediation statements are due five (5) business days before the mediation. This means they should be in the Mediator's hands five (5) business days prior to the mediation. The mediation statement is not to be served on any party. It goes only to the Mediator. The mediation statement must be factual and must contain an offer of settlement. There is no page limit.

A client with settlement authority must be present at the mediation. No telephone presence is allowed.

In order to promote communication among the parties, counsel and the Mediator and to facilitate settlement of the dispute, each of the undersigned agrees that the entire mediation process is confidential. All statements made during the course of the mediation are privileged settlement discussions, and are made without prejudice to any party's legal position, and are inadmissible for any purpose in any legal proceeding. These statements, offers, promises, and conduct (a) will not be disclosed to third parties except persons associated with the participants in the process, and (b) are privileged and inadmissible for any purposes, including impeachment, under Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule or common law provisions.

Each party agrees not to seek to compel the testimony of the Mediator or any employee of his law firm, or to compel the Mediator or any employee of his law firm to produce any document provided by the other party to the Mediator or to the Mediator's law firm. The parties agree to defend the Mediator from any subpoenas from outside parties arising out of this Agreement or mediation. The parties agree that neither the Mediator nor the Mediator's law firm is a necessary party in any arbitral or judicial proceeding relating to the mediation or to the subject matter of the mediation. Neither the Mediator nor his law firm nor its employees or agents, shall be liable to any party for any act or omission in connection with any mediation conducted pursuant to this Agreement.

3

Any documents provided to the Mediator by the parties will be destroyed within 30 days after the conclusion of the mediation, unless the Mediator is otherwise instructed by the parties.

Finally, the Mediator, each party, and counsel confirm that they have disclosed any past or present relationship or other information that a reasonable person would believe could influence the Mediator's impartiality and that no conflict of interest or appearance of a conflict of interest exists.

This letter shall serve as our memorandum of understanding as to the terms of the mediation and your payment of the $695 deposit will indicate the full acceptance of the terms contained in this letter. Please remember that our goal is to arrive at a settlement. Come to the Mediation in good faith to accomplish this goal.

Sincerely,

**s/Neil P. Forrest**

STORCH AMINI MUNVES PC
A New York Professional Corporation

KEVIN FRITZ
Member NY Bar

March 25, 2008

**VIA FACSIMILE**

Stewart Headlee, Esq.
Hopkins Law Firm
1000 West Second Street
Little Rock, Arkansas 72201

Re:  **Ames Merchandising Corporation v. Groton Industries a/k/a Cheyenne Industries; 08-cv-1836**

Dear Mr. Headlee:

As counsel for plaintiff Ames Merchandising Corporation ("Ames") in the above-referenced matter, we write in response to your motion to strike Exhibit D to our declaration in opposition to Groton Industries' ("Groton") motion to withdraw the reference. The exhibit at issue was not submitted for any purpose other than to demonstrate that the mediation before Neil Forrest has not been closed. Upon your confirmation that the mediation is indeed still active, which Groton cannot dispute since it requested by letter dated March 5, 2008, that the mediation be placed on "inactive" status, we will agree to withdraw the aforementioned exhibit to our opposition papers.

Regards,

Kevin Fritz

cc:  Sarah Campbell, Esq. (*via facsimile*)

2 Grand Central Tower  New York, New York 10017  Tel: 212.490.4100  Fax: 212.490.4208  E-mail: kfritz@samlegal.com
Washington, DC   Garden City, NY   South River, NJ